# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RADFORD MABERY,[1] | ) |
|     Plaintiff, | ) ) ) |
| v. | ) )   Case No. CIV-23-00935-JD |
| SGT FNU HAMMON, individually and official capacity, | ) ) ) ) |
|     Defendant. | ) ) |

## ORDER

Before the Court is the Report and Recommendation ("R. & R.") [Doc. No. 27] of United States Magistrate Judge Suzanne Mitchell, to whom this 42 U.S.C. § 1983 action was referred for initial proceedings in accordance with 28 U.S.C. § 636(b)(1)(B). In his Complaint, Plaintiff alleges that Sgt. Hammon[2] used excessive force when escorting Plaintiff "to the SHU,"[3] and "breaking [Plaintiff's] left leg in two places," in violation of Plaintiff's Eighth Amendment rights. Compl. [Doc. No. 1] at 2–3.[4] Defendant filed the court-ordered Special Report averring that Plaintiff "has not exhausted administrative remedies." [Doc. No. 22 at 8]; *see also* [Doc. No. 25]. Defendant then moved to dismiss

---

[1] Plaintiff is Radford Maybery, Oklahoma Department of Corrections Inmate #422003. The filings in this case indicate Radford Mabery.

[2] Defendant is Sgt. Redbird Hammond. *See* [Doc. No. 22-3 at 2].

[3] SHU means special or segregated housing unit.

[4] The Court uses CM/ECF page numbering from the top of filings in citations.

Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), or alternatively for summary judgment in his favor, for Plaintiff's failure to exhaust administrative remedies. [Doc. No. 23].[5] Plaintiff did not respond to Defendant's motion.

Judge Mitchell recommends that the Court convert Defendant's motion to a motion for summary judgment under Federal Rule of Civil Procedure 56 and grant the motion based on Plaintiff's failure to exhaust his administrative remedies. *See* R. & R. at 1, 5, and 11. Plaintiff filed a timely Objection to the R. & R., asserting, in part, that there "is no need to exhaust [administrative remedies] when it's an emergency." *See* Obj. [Doc. No. 30 at 3]. Additionally, he contends that he was in the hospital for seven days following the incident, "was heavily sedated" when he returned to North Fork Correctional Center ("North Fork") in Sayre, Oklahoma, and then was promptly transferred to Joseph Harp Correctional Center ("JHCC") in Lexington, Oklahoma; thus, he "did all [he] could to exhaust remedies." *Id.*

As required by 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), the Court has conducted a de novo review of those matters to which Plaintiff objected. Having concluded that review, and for the reasons discussed below, the Court accepts the R. & R., treats Defendant's motion as one for summary judgment under Rule 56, and concludes that Defendant is entitled to summary judgment.

---

[5] Defendant raised other arguments that the Court does not reach. *See also* R. & R. at 2–3 n.3.

2

I.  **BACKGROUND**

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections ("ODOC") initiated this action on October 16, 2023. *See* Compl. [Doc. No. 1]. He alleges that Defendant, a correctional officer at North Fork[6] where Plaintiff was housed in October 2021, used excessive force while escorting Plaintiff to the SHU on October 21 or 22, 2021. Compl. at 1–2, 5. He alleges Defendant "hyper-extended [Plaintiff's] arms over [his] head aggressively caus[ing] [him] to cry out in pain." *Id.* at 2. "[Defendant] then threw [Plaintiff] to the ground; throwing his entire body weight upon [him], breaking [his] left leg in two places." *Id.* Plaintiff required surgery to repair his leg and was in the hospital on two occasions for treatment. *Id.*

Plaintiff's ODOC external movement history shows he was "[o]ut to the [h]ospital on October 22, 2021, and returned to North Fork on October 29, 2021. [Doc. No. 22-5 at 2]. He returned to the hospital again on November 1, 2021, and then was transferred to JHCC, another ODOC facility, on November 4, 2021. *See id.* Plaintiff claims that he sent a Request to Staff ("RTS") to the chief of security at North Fork on December 17, 2021, asking him to secure and preserve video footage and to investigate the incident, but that he never received a response. *See* Compl. at 5; Obj. at 3. Plaintiff, however, did not attach

---

[6] North Fork is no longer an ODOC facility as ODOC allowed its lease agreement with CoreCivic and that facility to expire on June 30, 2023. *See* [Doc. No. 22 at 4]; *see also* Press Release, Oklahoma Department of Corrections, ODOC Opens Great Plains Correctional Center (May 10, 2023), https://oklahoma.gov/doc/newsroom/2023/odoc-opens-great-plains-correctional-center.html (last accessed Dec. 30, 2024). However, it was an ODOC facility when Plaintiff was housed there in October 2021.

3

this referenced grievance document, or any grievance documents, to his Complaint or Objection.

The records attached to the Special Report indicate Plaintiff, seven months after the incident, submitted a RTS on May 24, 2022, to Rick Whitten, the warden at North Fork, asserting that Defendant "broke [his] leg" and requesting that video of the October 22, 2021 incident be "secured." [Doc. No. 22-16 at 8]. In response, Whitten replied that "[i]nmates are not allowed access to any video." *See id.*

On June 1, 2022, Plaintiff submitted an Inmate/Offender Grievance to Whitten while he was in the SHU at Mack Alford Correctional Center in Stringtown, Oklahoma. *See id.* at 7. Plaintiff indicated on the grievance form that he had not previously submitted a grievance on that same issue. *See id.* Plaintiff asserted in the grievance that his leg was broken by Defendant on October 22, 2021, and he asked the reviewing authority to secure video of the incident. *See id.* He further indicated that no informal action had been taken to resolve the issue because he transferred facilities. *See id.* Whitten responded on June 15, 2022, that the grievance was "[o]ut of time from [the] date of [the] alleged incident" and that "inmates are not provided access to video." *Id.* at 6.

Plaintiff filled out an appeal form to the Administrative Review Authority ("ARA"), which he dated June 29, 2022. *Id.* at 5. He included the form in a packet of materials he mailed to the ARA in March 2023, asserting that his appeal had gone unanswered. *Id.* at 4–5. The ARA received the packet on April 25, 2023. *Id.* at 2–5. Mark Knutson, manager of ODOC's ARA, responded to Plaintiff on April 27, 2023, indicating

4

Plaintiff's appeal was "filed improperly" and that the office had "no record of receiving an appeal from [Plaintiff] in June or July 2022." *Id.* at 2–3; *see also* [Doc. No. 22-17].

Plaintiff contends that he "did all [he] could to exhaust" his administrative remedies given that he was in the hospital for seven days following the incident, he "was heavily sedated" upon his return to North Fork from the hospital, and he was subsequently transferred to JHCC. Obj. at 3. Attached to the Special Report, and filed under seal, are Plaintiff's medical records. *See* [Doc. No. 25]. The records confirm that Plaintiff was admitted to Jackson County Memorial Hospital in Altus on October 21, 2021, and underwent surgery on his left leg on October 22, 2021. [Doc. No. 25-2 at 11]. On October 23, 2021, one-day post-op, Plaintiff reported his pain was "under control with minimal narcotics." *See id.* at 18. He was discharged from the hospital on October 29, 2021, with acetaminophen for pain. *Id.* at 51.

Plaintiff returned to the hospital on November 1, 2021, after self-medicating in ODOC custody. [Doc. No. 25-1 at 10, 47, 60–61]. Plaintiff reported that when he was discharged to North Fork on October 29, he was not given pain medication, "so he found his own meth and oxycodone." *Id.* at 47. As a result, Plaintiff was prescribed Norco and discharged from the hospital on November 4, 2021, to JHCC. *Id.* at 47–49.

## II.  **STANDARD OF REVIEW**

In Defendant's motion to dismiss, he relies on documents that are part of the Special Report. "A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading[s] are presented to and not excluded by the

court.'" *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(d)).

Plaintiff has had sufficient notice of conversion of Defendant's motion to dismiss into a summary judgment motion. Plaintiff received notice in the Court's Order Requiring Service and Special Report [Doc. No. 8 at 3] that if Defendant filed a motion relying on materials not included in the Complaint, such a motion would be converted into a motion for summary judgment. Defendant thereafter filed a motion to dismiss relying on the court-ordered Special Report and alternatively moved for summary judgment. *See* [Doc. No. 23 at 2]. Plaintiff did not file anything in response to Defendant's motion. Likewise, the R. & R. provided sufficient notice to Plaintiff of the conversion. *See* R. & R. at 1–3 & n.4.

In his Objection, Plaintiff did not object to the Court converting Defendant's motion to dismiss into a motion for summary judgment, and the Court's de novo review is limited to only those portions of the R. & R. to which objection is made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *see also United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996) (holding that a party's objections to the legal and factual issues in the magistrate judge's report and recommendation must be "specific to preserve an issue for de novo review by the district court or for appellate review").

Finally, the record establishes that Plaintiff has been given the opportunity to introduce countervailing evidence, and he has not done so. *See Burnham v. Humphrey Hosp. Reit Tr. Inc.*, 403 F.3d 709, 713–14 (10th Cir. 2005) (explaining there was no prejudice by converting the motion to dismiss to a motion for summary judgment where

6

the plaintiff had the opportunity to present evidence that was not contained in the complaint); *see also* R. & R. at 8 n.7 (noting that Plaintiff had not submitted any of the referenced grievance documents). As a result, the Court adopts the R. & R.'s logic and uses the Rule 56 standard here. *See id.* at 1–3 & n.4.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material 'if under the substantive law it is essential to the proper disposition of the claim.'" *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (quoting *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013)). "An issue is genuine 'if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.'" *Id.* (quoting *Becker*, 709 F.3d at 1022). In applying this standard, the Court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

### III. ANALYSIS

#### A. Exhaustion of Administrative Remedies under the PLRA

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 (PLRA) . . ., 42 U.S.C. § 1997e *et seq.*" *Jones v. Bock*, 549 U.S. 199, 202 (2007). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

7

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, the PLRA, which places restrictions on a prisoner's ability to file an action, "requires prisoners to exhaust prison grievance procedures before filing suit." *Jones*, 549 U.S. at 202.

Exhaustion under the PLRA "is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). A prisoner "must now exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." *Id.* Moreover, "exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." *Id.*

Before the Supreme Court's ruling in *Jones*, the Tenth Circuit, along with other circuit and lower courts, adopted certain procedural rules that required a prisoner to allege and demonstrate exhaustion in their complaint. *See Jones*, 549 U.S. at 204–05; *Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 725 (10th Cir. 2008) (unpublished) (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204 (10th Cir. 2003) and *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181 (10th Cir. 2004), *both abrogated by Jones v. Bock*, 549 U.S. 199 (2007)). These rules also required a prisoner to "attach a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (citation omitted). Under these same rules, courts dismissed the entire action if the prisoner failed to exhaust as to any single claim in his complaint. *See Jones*, 549 U.S. at 206; *Purkey*, 263 F. App'x at 725.

In *Jones*, the Supreme Court held that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. It also concluded that "[o]nly" unexhausted (or "bad claims") in a complaint are dismissed rather than the entire complaint. *Id.* at 221. Thus, post-*Jones*, the Tenth Circuit has recognized that prisoners "no longer [have] the duty of pleading exhaustion . . . ." *Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007); *see also Aquilar-Avellaveda*, 478 F.3d at 1225. Rather, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007); *see also Freeman*, 479 F.3d at 1260 (concluding that "defendants now have the burden of asserting the failure to exhaust").

Once the defendant demonstrates that the plaintiff did not exhaust his administrative remedies, "the onus falls on the plaintiff to show that remedies were unavailable to him." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (citation omitted). To that end, "the PLRA contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Supreme Court in *Ross* identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is unavailable: (1) when the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme might be so opaque

9

that it becomes, practically speaking, incapable of use," i.e., "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

**B.     Summary Judgment Evidence Establishes Plaintiff Failed to Timely Exhaust Administrative Remedies Available to Him**

A plaintiff exhausts administrative remedies "by properly following all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010). "[T]he applicable procedural rules [that prisoners must exhaust] are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (citation omitted).

ODOC's Inmate/Offender Grievance Process at OP-090124[7] requires an initial, informal attempt to resolve a complaint by talking with appropriate staff within three days of the incident. [Doc. No. 22-19 at 8]. If the matter remains unresolved, the inmate must then submit a written RTS within seven days of the incident, detailing the incident or issue completely but briefly.[8] *See id.* at 8–9.

---

[7] ODOC's Inmate/Offender Grievance Process at OP-090124, effective November 30, 2020, "is the written inmate grievance procedure that is made available to all inmates and that includes at least one level of appeal." *See* [Doc. No. 22-19 at 3].

[8] If there is no response to the RTS within thirty days of submission (but no later than sixty days), the inmate may file a grievance to the reviewing authority, attaching a copy of the RTS to the grievance form and asserting only the issue of the lack of response to the RTS. *See* [Doc. No. 22-19 at 10].

Should the informal attempts at resolution fail, the inmate's next step is submission of the "Inmate/Offender Grievance Form" to the appropriate reviewing authority within fifteen days of receipt of the response to the RTS.[9] *See id.* at 11. The inmate must attach to the grievance form a copy of the underlying RTS used in the informal resolution process and the response to same. *See id.* The grievance is submitted to the reviewing authority where the alleged incident occurred. *See id.* at 12. The reviewing authority then has twenty days to answer the grievance. *See id.* If the grievance cannot be answered in twenty days, the inmate will be notified in writing, and the deadline will be extended no more than twenty additional days. *See id.* at 13. If the inmate receives no response within thirty days (but no later than sixty days), the inmate may send the grievance to the ARA with evidence of submitting the grievance to the appropriate reviewing authority. *See id.*

An unfavorable response to the grievance may then be appealed to the ARA or the Medical ARA, as appropriate. *See id.* at 15. The final ruling by the ARA or Medical ARA concludes the administrative process available to the inmate through the ODOC. *See id.* at 17. The administrative process is exhausted after these steps have been completed.

---

[9] Grievances that are an emergency or of a sensitive nature can be submitted directly to the appropriate reviewing authority without informal resolution. [Doc. No. 22-19 at 17–18]. An emergency grievance is one in which the inmate faces "irreparable harm or personal injury." *See id.* at 18. A sensitive grievance is one in which the inmate "alleges misconduct by a staff member who either directly supervises the inmate . . . or is the reviewing authority where the inmate . . . is assigned." *See id.* The inmate must describe why it is an emergency or sensitive grievance that justifies bypassing the normal procedures and attempts at informal resolution, and the "grievance must include a statement specifying the personal injury or irreparable harm at risk." *See id.*

If a grievance is denied by the reviewing authority and the ARA as untimely, the inmate may request to submit a grievance out of time within fifteen days of the date of denial of the untimely grievance or appeal. *See id.* at 22. The inmate will have to "prove by substantial evidence" that his failure to submit the grievance or appeal in a timely manner was not his fault. *See id.*

Plaintiff failed to timely exhaust the administrative remedies available to him. Although Plaintiff contends that he sent a RTS to North Fork's chief of security on December 17, 2021, and the chief of security never responded, Plaintiff has not submitted this referenced RTS, nor is it included in the records attached to the Special Report. Moreover, the grievance process provides for relief in situations where a RTS goes unanswered. In such a case where the inmate has not received a response within thirty days (but no later than sixty days), the inmate may file a grievance to the appropriate reviewing authority asserting the lack of response and attaching the relevant RTS to the grievance form. [Doc. No. 22-19 at 10]. Even if there was record of Plaintiff submitting a RTS on December 17, 2021, that would have been more than seven days after the October 21 incident. *See id.* at 9 (requiring the RTS "must be submitted within seven (7) days of the incident").

Rather, the evidence of record shows that Plaintiff, seven months after the incident, submitted a RTS on May 24, 2022, to Whitten at North Fork. [Doc. No. 22-16 at 8]. That RTS is limited to a request for camera footage of the October 2021 incident. *See id.* Plaintiff in that RTS checks the line that he has "not already submitted a [RTS] or grievance on this same issue," which directly contradicts his assertion he did so on

12

December 17, 2021. *See id.* Whitten responded that "[i]nmates are not allowed access to any video." *See id.*

On June 1, 2022, Plaintiff submitted an Inmate/Offender Grievance to Whitten, in which he indicated no informal action was taken to resolve the issue because he transferred facilities. *See id.* at 7. Whitten thereafter responded that the grievance was "[o]ut of time from [the] date of [the] alleged incident" and that "inmates are not provided access to video." *Id.* at 6.

Nine months later, Plaintiff complained to the ARA that he had filed an appeal that had gone unanswered. *Id.* at 4–5. Included in Plaintiff's packet of materials, received by the ARA on April 25, 2023, was an appeal form Plaintiff dated June 29, 2022. *See id.* Knutson responded two days later, advising Plaintiff that his appeal was "filed improperly" and that the office had "no record of receiving an appeal from [Plaintiff] in June or July 2022." *Id.* at 2–3; *see also* [Doc. No. 22-17].

Plaintiff provides no explanation for why he waited nine months to inquire about an appeal that the ARA contends it never received, and Plaintiff does not dispute the documents contained in the Special Report. Knutson's affidavit establishes that the ARA did not receive a grievance appeal or any correspondence from Plaintiff in June or July 2022. [Doc. No. 22-17]. Thus, Defendant has met his initial burden of demonstrating that no disputed material fact exists regarding his affirmative defense of failure to exhaust. *See*, *e.g.*, *Stone v. Albert*, 257 F. App'x 96, 99–100 (10th Cir. 2007) (unpublished) (noting that a prison records custodian's uncontroverted affidavit was sufficient to establish that a prisoner failed to exhaust his administrative remedies).

### C. No Genuine Issue of Material Fact Exists as to the Availability of Administrative Remedies

In the face of this evidence, Plaintiff, as the nonmoving party, must "produce specific facts that show there is a genuine issue of fact" whether the administrative remedy operated as a dead end, the administrative process was opaque and incapable of use, or the prison staff interfered with his ability to use the procedures. *See May*, 929 F.3d at 1235; *see also Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (explaining that "[o]nce a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials").

Plaintiff contends in his Objection he "did all [he] could to exhaust" his administrative remedies because he was in the hospital for seven days after the incident, "was heavily sedated" upon his return to North Fork from the hospital, and was then subsequently transferred to JHCC. Obj. at 3. Additionally, he argues that there "is no need to exhaust [administrative remedies] when it's an emergency." *See id.* However, the ODOC has procedures to file out-of-time grievances or appeals, emergency grievances, and grievances from a transfer facility. *See* [Doc. No. 22-19 at 6, 12, 17–18, 22]. In fact, Plaintiff ultimately filed his grievance from a transfer facility. *See* [Doc. No. 22-16 at 7]. Plaintiff, however, never sought to proceed out of time or sought an emergency grievance.

Although Plaintiff's hospitalization may have prevented him from filing a RTS within seven days of the incident, he could have bypassed the informal resolution process

14

and submitted an emergency grievance within fifteen days of the incident. *See* [Doc. No. 22-19 at 11, 17–19]. "ODOC policies permit a prisoner to circumvent the informal resolution process and submit a grievance without first talking to an appropriate official and submitting a [RTS], provided that the grievance addresses a sensitive or emergency matter." *See Smith v. Beck*, 165 F. App'x 681, 684 (10th Cir. 2006) (unpublished). Additionally, the reviewing authority has deference to extend the submitting period up to sixty days based on good cause. [Doc. No. 22-19 at 11]. Moreover, there is no indication from the evidence of record that Plaintiff "was heavily sedated" upon his return to North Fork from the hospital, although he was likely in pain following surgery on his broken leg. It appears the reason Plaintiff returned to the hospital on November 1, 2021, was due to his own efforts to self-medicate while in ODOC custody. [Doc. No. 25-1 at 10, 47, 60–61]. As a result, Plaintiff was prescribed pain medication and discharged from the hospital on November 4, 2021, to JHCC. *See id.* at 47–49.

      Plaintiff has not demonstrated that administrative remedies were unavailable to him. Exhaustion is complete only when the grievance procedures are properly utilized, and the failure to complete the administrative exhaustion process is fatal. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Based on the record in this case, Plaintiff has failed to demonstrate the existence of a genuine issue of material fact with respect to the exhaustion of administrative remedies and summary judgment is proper. *Cf. May*, 929 F.3d at 1235 (concluding that "[b]ecause nothing in the record indicates that the administrative process was unavailable to Mr. May . . . there is no genuine dispute of material fact as to the availability of administrative remedies" and summary judgment

was proper). Consequently, the Court dismisses the sole claim in this action. *See Jernigan*, 304 F.3d at 1031 (affirming the district court's dismissal without prejudice of state inmate's § 1983 claim for failure to exhaust administrative remedies under the PLRA); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice.").

## IV.   CONCLUSION

For these reasons, the Court ACCEPTS Judge Mitchell's Report and Recommendation [Doc. No. 27] in its entirety and GRANTS Defendant's converted motion for summary judgment [Doc. No. 23]. This results in the dismissal without prejudice of Plaintiff's Eighth Amendment excessive force claim in the Complaint [Doc. No. 1] for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). A separate judgment will follow.

IT IS SO ORDERED this 30th day of December 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE